UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ERNEST CALVIN FLENTALL,

        Plaintiff,                Case No. 1:10-cv-161

v.                                               Honorable Robert J. Jonker

NANCY LANGE et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hoag, Funk, Kruger, Geer, Elkin, Johnson, Schwartz, Lange, Merlau and Curtis. The Court will serve the complaint against Defendants Schorthaar, Pfost, Powell, Nurse Peek, Gelabert, Peterson, Rider, Becker, Lacey and RUO Peek.

**Discussion**

I.   Factual allegations

Plaintiff Ernest Calvin Flentall presently is incarcerated at the Chippewa Correctional Facility, though the actions he complains of occurred while he was housed at the Lakeland Correctional Facility (LCF) and the Florence Crane Correctional Facility (ACF). Plaintiff sues the following LCF and ACF employees: LCF Health Unit Manager Nancy Lange; LCF Assistant Health Unit Manager Diane Schwartz; ACF Health Unit Manager Mary Ann Schorthaar; ACF Nurses (unknown) Peek, (unknown) Pfost, (unknown) Powell, (unknown) Peterson, and (unknown) Merlau; ACF Resident Unit Officer (RUO) (unknown) Peek; LCF Nurses Rhonda Rider and (unknown) Elkin; ACF Doctor (unknown) Gelabert; LCF School Principal (unknown) Hoag; ACF Teacher (unknown) Geer; LCF Doctors (unknown) Becker and (unknown) Lacey; LCF Records Administrator for Health Services Sharon Curtis; LCF Teacher (unknown) Funk; LCF Classification Director Randy Kruger; and LCF Corrections Officer N. Johnson.

In his complaint, Plaintiff makes a series of allegations regarding three different health conditions and certain custody arrangements. He alleges that he was transferred from LCF to ACF on April 16, 2008. On April 19, 2008, Defendant Schorthaar allegedly told Plaintiff that she was aware that he had "[w]ritten my girl up and we and [sic] not going to have that problem out of you over here." (Compl., docket #1 at 11.) Ten days later, on April 29, 2008, Plaintiff was examined at Duane L. Waters Hospital regarding his lower pack pain. He was prescribed Methadone to alleviate the pain, with instructions not to have the medication crushed because it was a time-release formulation. On April 29, 2008, Plaintiff spoke with Defendant Pfost about the crushing of his medication in contradiction to the prescribing doctor's orders. On April 30, 2008, when he

reported to the medication line, he again found his Methadone crushed. When Plaintiff again inquired about who had authorized the crushing, Pfost became abusive and unprofessional. Plaintiff told Pfost that he intended to file a grievance against her, and he began to solicit witnesses while standing in the medication line. Defendant Pfost filed a major misconduct ticket against Plaintiff that same day, allegedly in retaliation for his expressed intent to file a grievance against her. On May 1, 2008, Plaintiff filed his grievance against Pfost for her abusive treatment. He also filed a grievance against Defendants Powell, Peek and Pfost about the crushing of his Methadone. Plaintiff was interviewed by Defendant Merlau about the grievance, and Defendant Schorthaar denied the grievance. He filed a second grievance on May 15, 2010, which was dismissed as duplicative of a grievance he had filed on April 12, 2008. On May 19, 2008, Health Services changed his prescription for Methadone to Ultram. Plaintiff alleges that the Ultram has not helped his condition or alleviated his pain.

Plaintiff was issued a major misconduct ticket on May 24, 2008 by Defendant RUO Peek, who is the husband of Defendant Nurse Peek. Plaintiff alleges that RUO Peek's misconduct ticket was issued in retaliation for the grievances Plaintiff had written against his wife.

Plaintiff was placed on unemployable status on May 10, 2008 because he would not take a school test, notwithstanding the fact that Plaintiff has severe glaucoma that has left him blind in the right eye and partially blind in the left eye. On June 1, 2008, he filed a grievance about the change in status. Plaintiff also filed a grievance on June 17, 2008, in which he grieved the decision of Defendants Gelabert and Schorthaar to take him off of Methadone, alleging that the decision was taken in retaliation for Plaintiff having filed grievances against health service staff.

On September 28, 2008, Plaintiff met with Defendants Hoag and Funk to discuss the possibility of getting a medical exemption for school because of his vision problems. Defendants Hoag and Funk reported that they had spoken with Defendant Becker, who falsely stated that Plaintiff had 20/20 vision. They therefore did not grant the exemption from school. Plaintiff filed a grievance against Hoag about the denial, alleging that it constituted deliberate indifference to his medical condition. He also filed a grievance against Defendant Becker for deliberate indifference to his severe glaucoma by not granting a special accommodation to be exempt from school.

Plaintiff was interviewed by LCF Classification Director Defendant Randy Kruger on October 23, 2008. Kruger informed Plaintiff that he had spoken with health services about Plaintiff's medical condition. Plaintiff thereafter attempted to speak with LCF Health Services Manager Defendant Lange, Assistant Health Services Manager Defendant Schwartz, and Health Services Record Administrator Defendant Curtis about their release of his medical information to Kruger without his permission. He filed a grievance against them on October 24, 2008.

On November 10, 2008, Plaintiff met with Defendant Dr. Lacey about his migraine headaches. Lacey concluded that the headaches were cluster headaches, and he prescribed a heart medication. The headaches returned in two weeks. Plaintiff asked Defendant Curtis for a copy of Lacey's medical report, but his request was denied or ignored. He filed a grievance against Defendants Lacey and Curtis that was denied as untimely.

Plaintiff reported to the medication window on December 17, 2008. Plaintiff alleges that he took his medication, and Defendant Elkin observed him swallowing it. Defendant Corrections Officer Johnson, however, allegedly demanded that Plaintiff open his mouth, using foul

language and acting unprofessionally. The next day, Plaintiff filed a grievance about the incident against both Elkin and Johnson.

On February 24, 2009, Defendant Lacey wrote a special accommodation notice that included no work assignment from February 24, 2009 to August 24, 2009. Plaintiff attempted to show his notice to Defendant Kruger on March 20, 2009. Kruger, however, ignored the accommodation and tried to force Plaintiff to attend school. Plaintiff grieved the incident.

Plaintiff alleges that he wrote numerous requests to Defendant Becker, asking to be seen about his glaucoma and his need for transition lenses for his glasses. His requests went unanswered. On March 21, 2009, Plaintiff filed a grievance against Defendants Schwartz and Becker, alleging deliberate indifference to his medical needs.

On March 24, 2009, Defendant Lacey gave Plaintiff a special accommodation notice that included no school from March 24 to August 24, 2009. On April 23, 2009, Defendant Lacey discontinued the no-school order. Plaintiff again filed a grievance against Lacey. Plaintiff alleges that Lacey's action to discontinue the no-school order was taken in retaliation for Plaintiff's many grievances against Lacey and the other LCF medical staff.

Plaintiff's many grievances were uniformly denied or rejected for technical reasons. He appealed all grievances through Step III.

For relief, Plaintiff seeks declaratory and injunctive relief, including the immediate revocation or suspension of the medical providers' licenses to practice. He also seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Claims Regarding School (Defendants Hoag, Funk, Kruger, Becker, Lacey and Geer)

Plaintiff raises a series of claims regarding various Defendants not granting him a medical accommodation that would exempt him from school, resulting in his placement on unemployable status. *See* MICH. DEP'T OF CORR., Policy Directive 05.01.100(Y), (AA) (providing that prisoners who for a variety of reasons cannot attend school or work shall be deemed unemployable and shall not be permitted to participate in more leisure activities than those who work full time, with the exception of those who are unemployable because of medical restrictions). Specifically, he contends that Defendants Hoag, Funk, Becker and Lacey at one time or another denied or revoked his special accommodation and medical exemption from school. He also alleges that Defendants Hoag and Geer tried to force him to take a school test, despite his medical condition. In addition, he alleges that Defendant Kruger spoke with medical staff about his condition, yet continued to maintain him on unemployable status, and that Kruger ignored the medical accommodation when it was issued by Lacey. He further alleges that Defendant Lacey improperly removed the accommodation.

Plaintiff alleges that Defendants' actions violated his rights under the Eighth Amendment because they amounted to deliberate indifference to his serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In the context of medical needs, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, because a failure to

provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff alleges that he has been obliged to participate in school and has been placed on unemployable status because his glaucoma prevents him from doing so. Plaintiff's claims do not demonstrate any need for medical care, much less a serious one. Plaintiff has alleged no risk to his medical well being caused by being placed on unemployable status.

Moreover, to the extent that Plaintiff intends to argue that placement on unemployable status itself amounts to cruel and unusual punishment, his claim fails. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Here, Plaintiff's allegations do not involve a deprivation of food, medical care or sanitation or another intolerable prison condition. He alleges only that he should not be subjected to the limitations placed on other unemployable prisoners. The Eighth Amendment does not entitle Plaintiff to a particular program or classification status simply because he has glaucoma. Instead,

the amendment entitles him to constitutionally adequate medical care for his condition and other minimally adequate necessities. *Rhodes*, 452 U.S. at 347. Custody restrictions that are limiting or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Plaintiff alleges that his leisure time was limited and, presumably, that he was confined to his cell during working hours. The courts routinely have held that even placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Plaintiff alleges a far less restrictive confinement than segregation. His allegations therefore fail to state an Eighth Amendment claim.

Arguably, Plaintiff may also intend to allege that his due process rights were violated by his placement on unemployable status without an accommodation for his medical needs. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812

(6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to show that his placement on unemployable status without a medical exemption imposes an atypical and significant hardship. Plaintiff's sole complaint is that, as the result of his classification, the time for his leisure activities is limited to that enjoyed by prisoners working full time. By definition, Plaintiff's hardship is neither atypical or significant. He is subjected to no greater restriction than any prisoner working or attending school full time. He therefore fails to state a due process claim.

As a consequence, Plaintiff's Eighth Amendment and due process claims about forced school attendance and his unemployable status fail to state a claim against Defendants Hoag, Funk, Kruger, Becker, Lacey and Geer. Because Plaintiff makes no other allegations against Defendants Hoag, Funk Kruger and Geer, they will be dismissed from the action entirely.

### B. Abuse of Authority (Defendants Pfost, Elkin and Johnson)

Plaintiff alleges that Defendant Pfost was abusive and unprofessional toward him when he asked who had authorized the crushing of his Methadone. He also alleges that, on December 17, 2008, Defendant Elkin witnessed him swallow his medication, but stood by while Defendant Johnson demanded that Plaintiff open his mouth to show that it was empty, using foul and unprofessional language. Plaintiff alleges that all three Defendants abused their authority.

Plaintiff fails to allege a constitutional injury. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional

dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants Pfost and Johnson arising from their alleged verbal abuse or against Defendant Elkin for her acquiescence in such abuse. Because Plaintiff makes no other allegations against Defendants Elkin and Johnson, they will be dismissed from this action.

      **C.**      **Release of Medical Information (Defendants Lange, Schwartz and Curtis)**

Plaintiff alleges that Defendants Lange, Schwartz and Curtis improperly discussed with or released privileged medical information to Defendant Kruger without Plaintiff's permission. Plaintiff fails to identify what constitutional right was infringed by the alleged disclosures. "'[T]he

Constitution does not encompass a general right to nondisclosure of private information.'" *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (rejecting prisoner's claim that his "constitutional right to privacy was violated by disclosure to a prison guard of his HIV status) (quoting *J.P. v. DeSanti*, 653 F.2d 1080, 1089-90 (6th Cir. 1981)). The recognition of such a right "would force courts to 'balanc[e] almost every act of government, both state and federal, against its intrusion on a concept so vague, undefinable, and all-encompassing as individual privacy.'" *Id.* As a result, under clear circuit authority, Plaintiff's claims against Defendants Lange, Schwartz and Curtis for violation of his privacy fail to state a claim. As no other factual allegations implicate Defendants Schwartz or Lange, they will be dismissed from the action.

### D. Grievance Interview and Rejection (Defendants Merlau and Schorthaar)

Plaintiff alleges that Defendant Merlau interviewed him about his grievance against Defendants Gelabert, Powell, Peak and Pfost for crushing his Methadone, and that Defendant Schorthaar denied the grievance. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d

295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948.

Plaintiff has failed to allege that Defendant Merlau and Schorthaar engaged in any active unconstitutional behavior with respect to the crushing of his Methadone other than interviewing him about or denying his grievance. Accordingly, Plaintiff fails to state a claim against Merlau or Schorthaar. Because Plaintiff makes no other allegations against Merlau, Merlau will be dismissed from the action.

### E. Failure to Release Medical Report (Defendants Lacey and Curtis)

Plaintiff alleges that he met with Defendant Dr. Lacey on November 10, 2008 about his migraine headaches. Lacey prescribed a heart medication for a diagnosis of cluster headaches. When the headaches returned two weeks later, Plaintiff wrote Curtis, requesting a copy of Lacey's medical report of the November 10, 2008 appointment. He alleges that his request was ignored, in deliberate indifference to his Eighth Amendment rights.

Plaintiff fails to identify any right of constitutional dimension. The Eighth Amendment is addressed to the provision of life's minimal necessities. *See Rhodes*, 452 U.S. at 347. It is not implicated by the failure to produce a copy of a medical record. Plaintiff therefore fails to state a claim against Lacey and Curtis for this alleged deprivation. Because Plaintiff's only other allegations against Defendant Curtis regarding his right to privacy also failed to state a claim, Defendant Curtis will be dismissed from the action.

### F. Remaining Claims (Defendants Schorthaar, Pfost, Powell, Nurse Peek, Gelabert, Peterson, Rider, Becker, Lacey and RUO Peek)

In his remaining claims, Plaintiff alleges that Defendants Schorthaar, Pfost, Powell, Nurse Peek, Gelabert, Peterson, Rider, Becker, Lacey and RUO Peek failed to treat his glaucoma, migraine headaches, and back pain and/or retaliated against him for filing grievances. The Court concludes that Plaintiff's remaining claims should be served.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Hoag, Funk, Kruger, Geer, Elkin, Johnson, Schwartz, Lange, Merlau and Curtis will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's claims about his school assignment and unemployable status, abuse of authority, violation of his privacy rights, failure to provide medical records and denial of his grievances fail to state a claim against any Defendant and will be dismissed. The Court will serve the remainder of the complaint against Defendants Schorthaar, Pfost, Powell, Nurse Peek, Gelabert, Peterson, Rider, Becker, Lacey and RUO Peek.

An Order consistent with this Opinion will be entered.


Dated:   March 16, 2010          /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 UNITED STATES DISTRICT JUDGE