UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST CALVIN FLENTALL,

        Plaintiff,

Case No. 1:10-cv-161

Hon. Robert J. Jonker

v.

NANCY LANGE, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for summary judgment pursuant to Fed. R. Civ. P. 56(b) filed by defendants Mary Ann Schorfhaar, Hope Peek, Kenneth Peek, Janice Pfost and Rhonda Rider (docket no. 24).

    **I.**    **Background**

Plaintiff filed a 17-page complaint against 20 defendants alleging numerous claims of wrongful conduct that occurred while he was housed by the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) and the Florence Crane Correctional Facility (ACF). Plaintiff named the following LCF and ACF employees as defendants: LCF Health Unit Manager (HUM) Nancy Lange; LCF Assistant Health Unit Manager (AHUM) Diane Schwartz; ACF HUM Mary Ann Schorfhaar; ACF Nurses Hope Peek, Janice Pfost, (unknown) Powell, (unknown) Peterson, and (unknown) Merlau; ACF Resident Unit Officer (RUO) Kenneth Peek; LCF Nurses Rhonda Rider and (unknown) Elkin; ACF Doctor (unknown) Gelabert; LCF School Principal (unknown) Hoag; ACF Teacher (unknown) Geer; LCF Doctors (unknown) Becker and (unknown)

Lacey; LCF Records Administrator for Health Services Sharon Curtis; LCF Teacher (unknown) Funk; LCF Classification Director Randy Kruger; and LCF Corrections Officer N. Johnson.

In an extensive opinion screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 1997e(c), the court found that plaintiff's claims about his school assignment and unemployable status, abuse of authority, violation of his privacy rights, failure to provide medical records and denial of his grievances failed to state a claim against any defendant. *See* Opinion (March 16, 2010) (docket no. 7). As a result, the court dismissed defendants Hoag, Funk, Kruger, Geer, Elkin, Johnson, Schwartz, Lange, Merlau and Curtis. *Id.* However, the court concluded that plaintiff's claims that defendants Schorfhaar, Pfost, Powell, Nurse Peek, Gelabert, Peterson, Rider, Becker, Lacey and RUO Peek failed to treat his glaucoma, migraine headaches, and back pain, and retaliated against him for filing grievances should be served. *Id.* Those claims are now pending before the court.

**II.     Defendants' motion to dismiss Nurse Rider and Nurse Peterson**

**A.     Legal Standard**

Defendants seek to dismiss plaintiff's action against Nurse Rider and Nurse Peterson pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its

well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B. Nurse Rider

Nurse Rider seeks dismissal because plaintiff's complaint was devoid of factual allegations against her, only listing her name in the relief requested section of the complaint. The court disagrees. Contrary to defendant's assertion, plaintiff's complaint includes an allegation against Nurse Rider, i.e., an incident on May 7, 2008 in which Dr Gelabert contacted Nurse Rider regarding the crushing of plaintiff's medication. *See* Complaint at p. 12. Accordingly, defendant Rider's motion to dismiss should be denied.

### C. Nurse Peterson

Similarly, defendants seek to dismiss plaintiff's claims against Nurse Peterson for failing to include any allegation against the nurse. As an initial matter, the court notes that Nurse Peterson has not been served and that counsel has moved to dismiss this claim without entering an appearance on behalf of this defendant. This deficiency notwithstanding,[1] the court disagrees with counsel's observation that there is no claim asserted against Nurse Peterson, because plaintiff alleged that Nurse Peterson was involved in the May 7, 2008 incident. *See* Complaint at p. 12. Accordingly, the request to dismiss plaintiff's action against defendant Peterson should be denied.

---

[1] The court notes that it has authority to dismiss plaintiff's claims against Nurse Peterson under the *in forma pauperis* provision at 28 U.S.C § 1915(e)(2), which provides in pertinent part that, "the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal . . . (ii) fails to state a claim on which relief may be granted . . ."

### III. Defendants' motion for summary judgment (docket no. 24)

### A. Legal Standard

Defendants Nurse Schorfhaar, Nurse Rider, Nurse Peek, RUO Peek and Nurse Pfost move for summary judgment on various grounds. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

#### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

5

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's failure to file Step III grievances against RUO Peek and Nurse Rider

Richard B. Stapleton, the MDOC's Administrator for the Office of Legal Affairs, stated in an affidavit that he has overall responsibility for Step III grievance decisions. Stapleton Aff. at ¶ 1 (docket no. 25-3 at pp. 2-5). After searching the database for Step III grievance appeals filed by plaintiff, Stapleton found that plaintiff filed 16 grievances through Step III between May 1, 2008 and January 10, 2010. *Id.* at ¶ 14. None of these 16 grievances named defendants RUO Kenneth Peek, Nurse Peterson or Nurse Rhonda Rider. *Id.* at ¶ 15. Plaintiff has provided no evidence that he exhausted a grievance against any of these three individuals.

### 4. Plaintiff's grievances against Nurse Schorfhaar, Nurse Peek and Nurse Pfost

Defendants identify three grievances which name Nurse Schorfhaar and Nurse Pfost with respect to the alleged crushing of plaintiff's medication, and Nurse Peek and Nurse Pfost for retaliation: Grievance ACF 2008-05-398-12f3 (grievance "398"); ACF 2008-05-401-12e4 (grievance "401"); and Grievance ACF 2008-05-423-28a (grievance "423"). Grievance 398 involved plaintiff's April 28, 2008 conversation with Nurse Pfost regarding the crushing of his medication and mentions a doctor contacting the pain management committee to increase the dosage

6

of his medication. *See* Grievance 398 (docket no. 25-3 at p. 25). The step II appeal of grievance 398 was rejected as untimely. *Id.* (docket no. 25-3 at p. 17). The MDOC upheld the rejection at step III, noting that plaintiff failed to provide an explanation for the untimely step II appeal. *Id.* (docket no. 25-3 at p. 16). In summary, plaintiff did not properly exhaust grievance 398.

Grievance 401 involved plaintiff's interaction with Nurse Pfost on April 30, 2008, at which time the nurse allegedly acted in an unprofessional manner by berating plaintiff with a stream of obscenities when he inquired about his crushed medication. Grievance no. 401 (docket no. 25-3 at p. 29). In his grievance, plaintiff sought $10,000,000.00 in punitive damages for a violation of his Eighth and Fourteenth Amendment rights arising from this incident. *Id.* The grievance was denied at step I. *Id.* Plaintiff's appeal to step II was rejected as untimely. Grievance no. 401 (docket no. 25-3 at p. 28). The MDOC upheld the rejection at step III, noting that plaintiff failed to provide an explanation for the untimely step II appeal. *Id.* (docket no. 25-3 at p. 27). Thus, plaintiff did not properly exhaust grievance 401.

Finally, grievance 423 involved a meeting between plaintiff and an unnamed doctor on May 7, 2008 regarding increasing the dosage of his pain medication. According to the grievance, Nurse Schorfhaar became involved in a discussion, stating that plaintiff was seen throwing his medication in the trash can. Grievance no. 423 (docket no. 25-3 at p. 38). Plaintiff also refers to alleged retaliation by Nurse Pfost and Nurse Peek by writing plaintiff "fabricated" tickets. *Id.* (docket no. 25-3 at p. 39). This grievance was rejected at step I as duplicative of grievance 398. *Id.* (docket no. 25-3 at p. 37). The step II response affirmed the rejection at step I. *Id.* (docket no. 25-3 at p. 36). Then, the grievance was denied at step III. *Id.* (docket no. 25-3 at p. 35). The explanation for the denial of the grievance at step III, however, is inconsistent with the grievance record, stating

7

that the step I and II responses addressed the merits (although both responses rejected the grievance on procedural grounds), stating that grievance 423 is a duplicate of grievance 398 (an unclear conclusion, given that grievance 423 involved a later dispute with different staff grieved), and then addressing the merits of plaintiff's grievance (concluding that plaintiff "did not provide sufficient evidence to corroborate his allegations"). *Id.* Based on this record, it appears that the MDOC waived any procedural objection to the form of grievance 423, by ultimately addressing the merits of that grievance. Accordingly, the court concludes that plaintiff has properly exhausted his claim in grievance 423 against Nurse Schorfhaar for an Eighth Amendment claim arising from the crushing of Methafone.

To the extent that plaintiff's complaint alleged that Nurse Pfost violated his constitutional rights by wrongfully crushing his Methadone, *see* Compl. at p. 12, this claim is not properly exhausted, because the only claim plaintiff grieved against Pfost in grievance 423 was one for retaliation. The court concludes that plaintiff has properly exhausted his claim in grievance 423 against Nurse Pfost for retaliation only.

Similarly, to the extent that plaintiff's complaint alleged that Nurse Peek violated his constitutional rights by wrongfully crushing his Methadone, *see* Compl. at p. 12, this claim is not properly exhausted, because the only claim plaintiff grieved against Peek in grievance 423 was one of retaliation. Furthermore, although plaintiff exhausted a claim Nurse Peek for retaliation, this exhaustion is of no consequence, because plaintiff's complaint did not include an allegation of retaliation against her. It is elemental that a plaintiff's complaint must "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S.Ct. at 1949. For this reason, Nurse Peek is entitled to

summary judgment for lack of exhaustion and failure to state a claim and should be dismissed from this action.

        **5.     Nurse Peterson**

As previously discussed, Nurse Peterson has not yet been served in this action. However, evidence provided by the MDOC established that plaintiff did not exhaust any grievances against a Nurse Peterson. Plaintiff has provided no evidence on this issue. Because there is no evidence that plaintiff filed a grievance against Nurse Peterson, and he cannot establish proper exhaustion as to this defendant, it would be both a futile gesture and an uneconomical use of judicial resources to conduct further proceedings against this unserved defendant. "Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues." *Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009). "[N]o principle forbids a court to notice that [] a defense exists, is bound to be raised, and is certain to succeed when raised." *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir.1994). *See Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545 at *12 (W.D. Okla. Jan. 31, 2008) (meritorious affirmative defenses asserted by defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (a successful affirmative defense of lack of exhaustion raised by defendants served in a prisoner civil rights case "inures to the benefit of any unserved or defaulting defendants"); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001) (defendant's meritorious defense of qualified immunity

9

applied to other "yet-unserved defendants" who could raise the same defense). *Cf. Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[s]everal courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant'") ( quoting *United States v. Peerless Insurance Company*, 374 F.2d 942, 945 (4th Cir. 1967). Accordingly, the court should grant summary judgment in favor of Nurse Peterson for lack of exhaustion.

### 6. Summary

For the reasons stated above, the court concludes that plaintiff has failed to properly exhaust his claims against defendants RUO Peek, Nurse Peek, Nurse Rider, Nurse Peterson and Nurse Pfost (for non-retaliatory conduct related to crushing medication). Accordingly, these defendants are entitled to summary judgment for lack of exhaustion, with defendants RUO Peek, Nurse Peek, Nurse Rider and Nurse Peterson entitled to dismissal. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91.

### C. Plaintiff's claims against Nurse Schorfhaar

Plaintiff has three exhausted claims against Nurse Schorfhaar. First, that on May 7, 2008, she was involved in crushing his Methadone contrary to the doctor's prescription and medical recommendation. Compl. at p. 13. Second, that on June 11, 2008, Nurse Schorfhaar took plaintiff off of Methadone in retaliation for plaintiff's act of filing grievances against health care staff.

Compl. at p. 14.² Third, that Nurse Schorfhaar's act of taking plaintiff off of Methadone had Eighth Amendment implications. *Id.*³

### 1. Eight Amendment claim for crushing Methadone

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

---

² This is the subject of Grievance ACF 2008-06-536-12f (docket no. 25-3 at pp. 45-50). Defendants do not contest this grievance as unexhausted,

³ Plaintiff does not explicitly claim an Eighth Amendment violation for the discontinuance of his Methadone. However, reading plaintiff's complaint broadly, the court construes plaintiff's allegation that defendants took him off of Methadone "despite having been prescribed the pain medication prior to coming to prison" as raising an Eighth Amendment issue. Compl. at p. 13.

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Nurse Schorfhaar has submitted an affidavit setting forth the following facts. As a registered nurse and Health Unit Manager (HUM) at ACF, she did not personally treat prisoners on a regular basis. Schorfhaar Aff. at ¶¶ 2-3 (docket no. 25-5). She was a supervisor and not involved in treating plaintiff. *Id.* at ¶ 3. As a registered nurse, Schorfhaar had no authority to independently prescribe controlled substances and must follow the orders of a prescribing physician. *Id.* at ¶ 4.

With respect to the allegations of May 7, 2008, Nurse Schorfhaar noted that plaintiff was prescribed 10 mg of Methadone, two times a day. *Id.* at ¶ 6. The medication was not time released and could be crushed. *Id.* Plaintiff's medication was crushed because he was seen either "cheeking" the medication or putting it in a cup, which was then put in a trash receptacle to be retrieved by another inmate on porter duty. *Id.* at ¶ 7. The medication was crushed pursuant to a June 17, 2007 memorandum advising that the Methadone is to be "crushed and administered dissolved in water." *Id.* This information was provided to plaintiff in medical kite responses dated May 7, 2008 (docket no. 25-3 at p. 41) and June 3, 2008 (docket no. 25-3 at p. 23). *Id.* Plaintiff has not rebutted the statements set forth in the affidavit.

Viewing the facts in the light most favorable to plaintiff, the court concludes that there is no Eighth Amendment claim against Nurse Schorfhaar. The Methadone was appropriately dispensed to plaintiff. While plaintiff apparently preferred to have uncrushed Methadone, his preference for this method of dispensing the medication does not form the basis for a federal constitutional claim. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim").

13

*See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Accordingly, Nurse Schorfhaar is entitled to summary judgment on this claim.

### 2. Eighth Amendment claim for discontinuing Methadone

Nurse Schorfhaar addressed the circumstances surrounding plaintiff's removal from Methadone as follows. Plaintiff's pain concerns were managed by the Pain Management Committee (PMC). Schorfhaar Aff. at ¶ 9. She is not a member of the PMC. *Id.* On May 19, 2008, the PMC recommended that plaintiff be tapered off Methadone over a period of two weeks, and that the following medications be substituted to manage his pain: "Tylenol up to 2 Gm/day; a formulary NSAID [non-steroidal anti-inflammatory drug] of choice up to 1/2 maximum dose, Ultram 50-100-mg three times per day as needed, and Flexedril 10 mg two times per day in combination with the NSAID." *Id.* Plaintiff was advised of the PMC recommendation during an examination with Dr. Gelabert, at which time Nurse Schorfhaar explained to him on that date how he could get a copy of the recommendation. *Id.*[4] Plaintiff has not rebutted the statements as set forth in the affidavit.

The medical record reflects that Dr. Gelabert saw plaintiff due to back pain and that during the examination, they reviewed the PMC recommendation from May 11, 2008. Progress Note (June 11, 2008) (docket no. 31). The progress notes reflect that plaintiff "got very upset" and asked for the name of the person responsible for the PMC order, apparently with the intent to contact the person or PMC. *Id.* The record reflects that the HUM (i.e., Nurse Schorfhaar) explained to

---

[4] Nurse Schorfhaar's reference to the date of the examination as July 11, 2008 appears to be a typographical error. *See* Schorfhaar Aff. at ¶ 9. In this regard, the Schorfhaar cites the clinical progress note for June 11, 2008 in support of her affidavit. *Id.*

14

plaintiff how he could get a copy of the recommendation and information to contact the PMC. *Id.* He was also advised that the medical practitioner at the correctional facility could not change the new order, but could take steps for a re-evaluation with the PMC in the future. *Id.*

Viewing the facts in the light most favorable to plaintiff, the court concludes that there is no Eighth Amendment claim against Nurse Schorfhaar arising from the discontinuance of the Methadone. Nurse Schorfhaar was not personally involved in changing plaintiff's pain management regimen. The PMC made the decision to remove plaintiff from Methadone and replace it with other pain medication. Furthermore, plaintiff's desire to receive Methadone rather than the other pain medications prescribed by the PMC does not form the basis for a federal constitutional claim. *See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003); *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Accordingly, Nurse Schorfhaar is entitled to summary judgment on this claim.

        **c.**        **Retaliation for discontinuing Methadone**

Finally, plaintiff alleged that Nurse Schorfhaar retaliated against him by taking him off Methadone. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To establish the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*,

15

250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (internal quotation marks omitted).

Viewing the facts in the light most favorable to plaintiff, the court concludes that plaintiff has not established a retaliation claim against Nurse Schorfhaar. In order to state a valid First Amendment retaliation claim, plaintiff must show that Nurse Schorfhaar had the ability and authority to take "adverse action" against him. *See Smith*, 250 F.3d at 1038 (6th Cir. 2001); *Shehee v. Luttrell*, 199 F.3d 295, 300-01 (6th Cir. 1999). Stated another way, "[u]nder the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decisionmaker is at issue, that is, the plaintiff must show that the decision was motivated, in part, by the plaintiff's protected activity." *Smith*, 250 F.3d at 1038. Here, it was PMC, not Nurse Schorfhaar, who made the decision to change plaintiff's pain medication. Because Nurse Schorfhaar was not a decisionmaker, her opinions could not serve as the basis for a retaliation claim. *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998) ("[s]tatements by nondecisionmakers . . . cannot suffice to satisfy the plaintiff's burden . . . of demonstrating animus"). Nurse Schorfhaar is entitled to summary judgment on this claim.

D.    **Plaintiff's claims against Nurse Pfost**

Plaintiff has alleged that on April 30, 2008, Nurse Pfost issued a major misconduct in retaliation for his threat to write a grievance against her regarding unprofessional behavior and language. Compl. at pp. 11-12. The record reflects that Nurse Pfost wrote plaintiff a major

16

misconduct on April 30, 2008 and that he was found guilty on May 14, 2008. Misconduct Report (docket no. 25-6). Plaintiff alleged that he was written the misconduct on April 20, 2008, and does not challenge the record or dispute that he was found guilty. Compl. at p. 12. "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir. 2005), quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994). Accordingly, Nurse Pfost is entitled to summary judgment on plaintiff's retaliation claim. There being no other exhausted claims pending against her, Nurse Pfost is entitled to dismissal from this action.

## VI. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 24) be **GRANTED**, and that Nurse Schorfhaar, Nurse Peek, RUO Peek, Nurse Pfost, Nurse Rider and Nurse Peterson be dismissed from this action.


Dated: January 31, 2011                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).