UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST CALVIN FLENTALL,

        Plaintiff,

Case No. 1:10-cv-161

Hon. Robert J. Jonker

v.

NANCY LANGE, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by defendants Raymond Gelabert, M.D. and Robert Lacy, D.O. (docket no. 44) and a "motion for dismissal and/or summary judgment based on failure to state a claim upon which relief can be granted" filed by defendant David Becker, O.D. (docket no. 56).

        **I.**      **Background**

Plaintiff filed a 17-page complaint against 20 defendants alleging numerous claims of wrongful conduct that occurred while he was housed by the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) and the Florence Crane Correctional Facility (ACF). Plaintiff named the following LCF and ACF employees as defendants: LCF Health Unit Manager (HUM) Nancy Lange; LCF Assistant Health Unit Manager (AHUM) Diane Schwartz; ACF HUM Mary Ann Schorfhaar; ACF Nurses Hope Peek, Janice Pfost, (unknown) Powell, (unknown) Peterson, and (unknown) Merlau; ACF Resident Unit Officer (RUO) Kenneth Peek; LCF Nurses Rhonda Rider and (unknown) Elkin; ACF Doctor (unknown) Gelabert; LCF School Principal

(unknown) Hoag; ACF Teacher (unknown) Geer; LCF Doctors (unknown) Becker and (unknown) Lacey; LCF Records Administrator for Health Services Sharon Curtis; LCF Teacher (unknown) Funk; LCF Classification Director Randy Kruger; and LCF Corrections Officer N. Johnson.

In an extensive opinion screening the complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 1997e(c), the court found that plaintiff's claims about his school assignment and unemployable status, abuse of authority, violation of his privacy rights, failure to provide medical records and denial of his grievances failed to state a claim against any defendant. *See* Opinion (March 16, 2010) (docket no. 7). As a result, the court dismissed defendants Hoag, Funk, Kruger, Geer, Elkin, Johnson, Schwartz, Lange, Merlau and Curtis. *Id.* However, the court concluded that plaintiff's claims that defendants Schorfhaar, Pfost, Powell, Nurse Peek, Gelabert, Peterson, Rider, Becker, Lacy and RUO Peek "failed to treat his glaucoma, migraine headaches, and back pain and/or retaliated against him for filing grievances" stated claims and should be served as to those defendants. *Id.*

In an order entered March 17, 2011, the court dismissed defendants Schorfhaar, Pfost, Rider, Nurse Peek and RUO Peek. *See* Order (docket no. 77). Plaintiff's claims against defendants Dr. Gelabert, Dr. Lacy, Dr. Becker, Nurse Powell and Nurse Peterson remain pending.[1]

  **II.** **Dr. Gelabert and Dr. Lacy's motion to dismiss (docket no. 44)**

  **A.** **Legal Standard**

Defendants seek to dismiss plaintiff's action against Drs. Gelabert and Lacy pursuant to Fed. R. Civ. P. 12(b)(6) for lack of exhaustion and failure to state a claim.

---

[1] The record reflects that Nurse Powell returned a waiver of service on May 16, 2011. *See* Waiver (docket no. 85). Nurse Peterson has yet to be served.

2

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).  In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary

judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC

5

prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

### a. Grievances which do not name either Dr. Gelabert or Dr. Lacy

As previously discussed, plaintiff's only claims remaining against defendants are that they failed to treat his glaucoma, migraine headaches, and back pain, and retaliated against him for filing grievances. *See* Opinion (docket no. 7). Plaintiff's complaint has alleged misconduct from April 16, 2008 through April 23, 2009. Compl. (docket no. 1 at pp. 11-15). Drs. Gelabert and Lacy identified 16 grievances filed by plaintiff from April 16, 2008 through February 11, 2010 (the date of the complaint). *See* MDOC Grievance Inquiry Screen (docket no. 44-2). Of these grievances, 10 do not name either of the doctors. *See* RGC-08-02-00194-12f (docket nos. 44-3); ACF-2008-05-0401-12E4 (docket no. 44-5); LCF-2008-03-0230-12F3 (docket no. 45-3);

LCF-2008-06-0440-11C (docket no. 45-4)[2]; LCF-2008-10-0860-02C (docket no. 46-1); LCF-2008-10-0861-12G4 (docket no. 46-2); LCF-2008-12-1120-28E (docket no. 46-3); LCF-2009-01-0035-17F (docket no. 46-4); LCF-2009-03-0340-28I (docket no. 47-1); LCF-2009-03-0341-02D (docket no. 47-2). Because plaintiff failed to name either Dr. Gelabert or Dr. Lacy in these grievances, he has failed to properly exhaust these grievances as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*).

Defendants have identified four grievances which may implicate Dr. Gelabert: ACF-2008-05-0398-12F3 ("398") (docket no. 44-4); ACF-2008-04-0423-28A ("423") (docket no. 45-1); ACF-2008-06-0519-28E ("519") (docket no. 45-2)[3]; and ACF-2008-06-0536-12F3 ("536") (docket no. 45-5). In addition, defendants have identified three grievances which may implicate Dr. Lacy: No. 398; LCF-2009-03-0231-28E ("231") (docket no. 46-5); and LCF-2009-05-0454-28I ("454") (docket no. 47-3).

    **b.    Dr. Gelabert**

The court previously determined that plaintiff's claims that defendants "failed to treat his glaucoma, migraine headaches, and back pain and/or retaliated against him for filing grievances" stated claims for relief and should be served. *See* Opinion and Order (docket nos. 7 and 8). After

---

[2] The copy of this grievance is illegible. However, a legible copy of the grievance is attached to a previously-filed brief. *See* Grievance no. LCF-2008-06-0440-11C (docket no. 25-4 at pp. 41-43).

[3] Contrary to defendants' position, grievance no. 519 does not name Dr. Gelabert. *See* discussion in § II.B.2.b.iii, *infra*.

reviewing the complaint, it appears that plaintiff alleged three claims against Dr. Gelabert: (1) Dr. Gelabert knew that plaintiff's medications were being improperly crushed; (2) Dr. Gelabert improperly discontinued plaintiff's Methadone; and (3) Dr. Gelabert discontinued plaintiff's Methadone in retaliation for plaintiff's filing grievances against Health Services staff. *See* Compl. (docket no. 1 at pp. 12-13).

### i. Grievance no. 398

In no. 398, plaintiff complained that his medications were improperly crushed. However, this grievance was rejected by the MDOC at Steps II and III as untimely under P.D. 03.02.130. In his response, plaintiff argues that the MDOC cannot reject grievances as untimely, based upon his opinion that the policy directive regarding the filing of grievances "is much more flexible than they [i.e., the MDOC] would like to have the court believe." Plaintiff's Response (docket no. 65 at pp. 2-3). Plaintiff relies on Policy Directive 03.02.130 ¶ G.3, which provides that a grievance may be rejected if it "is filed in an untimely manner," but that "[t]he grievance shall not be rejected if there is a valid reason for delay; e.g., transfer." While the court cannot take judicial notice that the facts alleged in the grievance are true, plaintiff has not raised any objection which could would lead a court to conclude that a "reasonable dispute" exists with respect to whether the MDOC properly rejected of his untimely grievances. *See Jones*, 521 F.3d at 562. Rather, plaintiff has merely stated an objection to a procedure that the MDOC *might* use to calculate the timeliness of a *theoretical* grievance.[4] Under these circumstances, the court can take judicial notice that the

---

[4] Plaintiff provided the following argument:

"It may be that on September 20, 2010 an individual becomes aware that a doctor's visit on January 20, 2010, resulted in the generation of a report that led to a violation of his rights under the United States Constitution. The incident date is still January 20, 2010, despite the fact that he did not become aware of the impact that doctors [sic] visit had on him until

MDOC rejected certain grievances as untimely. Because plaintiff failed to timely appeal this grievance, he has failed to properly exhaust it as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470.

### ii.     Grievance no. 423

In no. 423, plaintiff also complained that his medications were improperly crushed. While this grievance does not name Dr. Gelabert, it refers to "the Doctor here at (ACF)." Assuming that plaintiff's reference to the doctor sufficiently identified Dr. Gelabert as the party being grieved, this grievance was rejected by the MDOC at each step of the grievance procedure as being duplicative of no. 398. Because plaintiff filed a duplicative grievance which was rejected under PD 03.02.130, he has failed to properly exhaust this grievance as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470.

### iii.    Grievance no. 519

No. 519 does not name Dr. Gelabert. For this reason, it is not properly exhausted as to him. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470. Moreover, this grievance relates to plaintiff's desire to be exempt from attending school and his refusal to take an aptitude test. As previously discussed, the court's opinion and order on initial screening denied all of plaintiff's claims with respect to his school assignment. *See* Opinion and Order (docket nos. 7 and 8). Accordingly, this grievance is irrelevant to plaintiff's remaining claims.

---

months later." Plaintiff's Response (docket no. 65 at pp. 2-3).

       **iv.**       **Grievance no. 536**

In this grievance, plaintiff complains that Dr. Gelabert interfered with his medical care in violation of the Eighth Amendment when the doctor discontinued his Methadone on or about June 11, 2008. The Step II response indicates that pursuant to a progress note of that date, this action was pursuant to the PMC (pain management committee) recommendation that the methadone be "tapered off in two weeks." *See* Step II response (docket no. 45-5 at p. 5). The court construes this grievance as related to plaintiff's remaining claims that defendants "failed to treat his glaucoma, migraine headaches, and back pain and/or retaliated against him for filing grievances." *See* Opinion (docket no. 7 at p. 15). Plaintiff appealed this grievance through Step III. Accordingly, this claim is properly exhausted as to Dr. Gelabert.

       **v.**       **Summary as to Dr. Gelabert**

Plaintiff filed four grievances against Dr. Gelabert. Two of these grievances, nos. 398 and 423, were not properly exhausted. One of the grievances, no. 519, related to matters which are not at issue in this lawsuit. Finally, plaintiff has exhausted one grievance, no. 536, with respect to his claim that Dr. Gelabert violated his Eighth Amendment rights by discontinuing plaintiff's Methadone on or about June 11, 2008. Accordingly, Dr. Gelabert's motion to dismiss should be granted as to all claims asserted in grievance nos. 398, 423 and 519, and denied as to his Eighth Amendment claim asserted in grievance no. 536.

       **c.**       **Dr. Lacy**

Plaintiff has alleged the following claims against Dr. Lacy: (1) Dr. Lacy evaluated plaintiff for migraine headaches, diagnosed plaintiff with cluster headaches, and prescribed "heart medication" for the headaches; (2) Dr. Lacy issued, and later discontinued, a special accommodation

notice for "no school;" (3) Dr. Lacy discontinued Plaintiff's "no school" accommodation in retaliation for plaintiff's filing grievances against Dr. Lacy and other medical staff. Compl. (docket no. 1 at pp. 14-15).

### i. Grievance no. 398

In no. 398, plaintiff named Dr. Lacy in complaining that his medications were improperly crushed. However, as previously discussed, plaintiff failed to properly exhaust it as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470. *See* discussion, § II.B.2.b.i, *supra*.

### ii. Grievance no. 231

In no. 231, plaintiff named Dr. Lacy in complaining that the doctor failed to properly treat his alleged migraine headaches. However, this grievance was rejected by the MDOC at all three steps of the grievance procedure as untimely under P.D. 03.02.130. Because plaintiff failed to file and appeal this grievance pursuant to P.D. 03.02.130, he has failed to properly exhaust it as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470.

### iii. Grievance no. 454

In no. 454, plaintiff grieved Dr. Lacy's alleged discontinuation of plaintiff's "no school" accommodation and the doctor's alleged retaliation. As previously discussed, plaintiff's claims regarding his school assignment have been dismissed. *See* Opinion (docket no. 7). Therefore, the portion of this grievance relating to his school accommodation is irrelevant to plaintiff's remaining claims in this action. Furthermore, plaintiff's grievance was rejected at all three steps of the grievance process. Because plaintiff failed to file and appeal this grievance

11

pursuant to P.D. 03.02.130, he has failed to properly exhaust it as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan*, 316 Fed. Appx. at 470.

### iv. Summary as to Dr. Lacy

Plaintiff filed three grievances against Dr. Lacy. Grievance nos. 398 and 231 were not properly exhausted. In addition, grievance no. 454 related to matters which are not at issue in this lawsuit. Plaintiff has failed to properly exhaust any grievances against Dr. Lacy. Accordingly, Dr. Lacy's motion to dismiss should be granted.

## III. Dr. Becker's motion for summary judgment (docket no. 56)

### A. Legal Standard

Dr. Becker has filed a combined motion to dismiss and for summary judgment. Because the doctor's motion relies on factual matters outside of the record, the court will address the motion as one for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Plaintiff's claims against Dr. Becker

Plaintiff has alleged three claims against Dr. Becker: (1) that the doctor did not grant him a special accommodation to not attend school; (2) that the doctor did not respond to his requests to be seen for glaucoma; and (3) that the doctor did not provide him with transition lenses. Compl. at pp. 13 and 15. Because plaintiff's claims regarding his school assignment have been dismissed, the only remaining claims relate to Dr. Becker's failure to provide medical treatment.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the

14

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Dr. Becker is a Doctor of Optometry who contracts to the MDOC's Florence Crane Correctional Facility (ACF). Becker Aff. at ¶¶ 2-3 (docket no. 58). Dr. Becker has examined plaintiff every three to six months since March 14, 2008. *Id.* at ¶ 4. Plaintiff's records indicate that he has been diagnosed with glaucoma since 2004. *Id.* at ¶ 5. He suffers from glaucoma in both eyes, with the right eye having advanced stages. *Id.* On August 13, 2008, in response to plaintiff's complaint of light sensitivity, Dr. Becker prescribed him solar shields, which offer greater protection from sunlight than transition lenses. *Id.* at ¶ 7. The solar shields were ordered on August 14, 2008. *Id.* Plaintiff did not request transition lenses, which in the doctor's opinion "serve no purpose in the treatment of glaucoma." *Id.* at ¶ 6.

On November 9, 2008, plaintiff reported late to his eye examination appointment, and reported having severe pain around his left eye. *Id.* at ¶ 9. Plaintiff's diagnostic pressure checks for glaucoma were good, with the probable cause of the pain being a sinus infection. *Id.* On May 8, 2009, plaintiff reported for his regular examination and complained that his eyes were bothering him. *Id.* at ¶ 10. Plaintiff's pressure tests were well maintained and he was referred for his yearly visit with Gulam Dastgir. M.D. at the MDOC's Duane Waters Health Center (DWC). *Id.* The progress notes for that date reflected the order for solar shields. *Id.* Plaintiff was seen for his "visual fields" at DWC on June 22, 2009. *Id.* at ¶ 11. In a follow-up examination of August 21, 2009, Dr.

15

Becker reviewed plaintiff's visual fields and then referred him back to DWC for a full glaucoma work up and consideration of laser surgery. *Id.* at ¶ 12. On September 22, 2009, Dr. Dastgir reported that a plan was put into place to perform laser trabeculoplasty on the nasal half of plaintiff's left eye with follow up examinations at DWC. *Id.* at ¶ 13. Finally, Dr. Becker noted that these procedures "are the usual treatment techniques for glaucoma patients." *Id.* at ¶ 14.

In his response, plaintiff disagrees with Dr. Becker's treatment, noting that the solar shields were too dark for inside use. Plaintiff also accuses Dr. Becker of contradicting MDOC Policy Directive 04.06.165 ¶ J with respect to the transition lenses and making a "fraudulent statement." The policy directive states as follows:

> J. Prescription glasses with glass, tinted or transitional lenses (i.e., lenses that darken when exposed to sunlight) shall be issued to a prisoner only if the treating BHCS eye care practitioner determines there is a medical need for such lenses (e.g., albinism, iris defects). The need and specific medical condition, including diagnosis, shall be documented in the prisoner's health record.

PD 04.06.165 at ¶ J.

The record reflects that plaintiff received on-going treatment for his glaucoma. While plaintiff has expressed a desire to have the MDOC provide him with transition lenses, his discontent with Dr. Becker's decision not to order those lenses cannot form the basis for a federal constitutional claim. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed.

Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Accordingly, Dr. Becker is entitled to summary judgment on this claim.

### IV.  Recommendation

For the reasons set forth above,

I respectfully recommend that Dr. Gelabert's motion to dismiss (docket no. 44) be **DENIED** with respect to plaintiff's claim that the doctor violated his Eighth Amendment rights by discontinuing his Methadone on or about June 11, 2008, and **GRANTED** in all other respects;

I further recommend that Dr. Lacy's motion to dismiss (docket no. 44) be **GRANTED** and that he be dismissed from this action; and,

I further recommend that Dr. Becker's motion for summary judgment (docket no. 56) be **GRANTED** and that he be dismissed from this action.


Dated:  August 8, 2011                             /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).